WILMOT v. WEST.

Opinion delivered March 21, 1921.

1.  CONTRACTS—SUBSTANTIAL PERFORMANCE.—In a suit on a building contract, the finding of the chancellor that there had been a substantial compliance with the contract *held* not against the preponderance of the evidence.

2.  ARBITRATION AND AWARD—AGREEMENT.—Where, in a suit on a building contract, the parties agreed that the court might appoint two disinterested persons to examine the work and ascertain its actual value, the contractor could not complain that the value of the work was ascertained in that way.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

### STATEMENT OF FACTS.

E. O. West brought suit in equity against S. G. Wilmot for $1,884.35, alleged to be due him for materials furnished and labor performed in making certain improvements upon a two-story frame dwelling house in the city of Hot Springs, Arkansas, belonging to S. G. Wilmot, and also to have the amount recovered declared to be a lien on the house and the lot upon which it is situated.

E. B. Mooney also brought suit in equity against S. G. Wilmot to recover $300 for materials furnished and labor performed upon the same house under a sub-contract with West and to have the amount recovered declared a lien upon said house and lot. The two suits were consolidated and tried together upon a state of facts substantially as follows:

Mrs. S. G. Wilmot owned a two-story frame house situated on a lot in Hot Springs, Arkansas, which she had purchased for $5,000. She wished to have material alterations and repairs made on the property, and in September, 1917, entered into a written contract with E. O. West for that purpose. The contract provided that the repairs should be constructed in accordance with the specifications accompanying the contract, and that all the materials furnished and the labor done should be furnished and executed in a first-class and workmanlike manner. The consideration recited was $2,655. The specifications provided for the excavation for front steps and a driveway on the lot. It provided for a concrete retaining wall, a concrete walk, and other concrete work. It also provided for a cobblestone fence, 120 feet long, 12 inches thick, and not to exceed 2½ feet high. It provided that the contractor might use all the materials taken out of the building available to be re-used and furnish the rest of the materials except as specified in the contract. The owner was to furnish shingles for the roof

of the porch and the garage. The garage was to be one-story and of the size and specifications provided in the contract. The contract also provided for a butler's pantry, a kitchen, and a sleeping porch of the kind and character designated in the specifications. It provided for an extension of the front porch and the kind and character of materials to be used in constructing and roofing it.

Subsequently Mrs. Wilmot made additional agreements with West for material changes and alterations in her plans for repairing the dwelling house. The sleeping porch was changed into a room, and the front porch was altered so as to make it two stories high with a sleeping porch on the second story. The plans for the garage were changed so as to make it two stories high. The roofs of the garage and of the front porch were changed from shingle to some sort of composition roofs. This was done because the change of the front porch from one story to two stories and of the garage would make the roof so flat that it was not practical to have a shingle roof on either of them. Numerous other changes in the plans for the repairs of the interior of the house were agreed upon between the parties.

When the repairs were near completion, Mrs. Wilmot called in F. J. W. Hart, an architect of thirty years' experience, to inspect the work which had been done by Mr. West. Mr. Hart testified that the hardwood floors put in by West were better than the average, but that the general character of the work done by West on the remainder of the building was of very common grade. He stated in detail the defects in the work.

Mrs. Wilmot also testified in detail about the defects in the materials furnished and the work done by Mr. West on the house. Her husband was her agent in making the contract, and he also testified that neither the materials nor the workmanship came up to the specifications required by the contract.

E. B. Mooney was a sub-contractor under E. O. West and did the stone work required by the contract

for West. Certain changes in the stone work were agreed upon by the parties during the progress of the work. West and Mooney were witnesses for each other. Each testified that the work strictly came up to the specifications of the original contract except where alterations were agreed upon between the parties, and that where alterations were agreed upon, the work both in regard to workmanship and materials came up to the specifications of the contract. They also testified that, after the contract had been completed, Mrs. Wilmot went with them to the building and examined the repairs in detail, and admitted to them that the work done and the materials used came up to the specifications of the contract and that she owed them respectively the amounts claimed. Each claimed the amount sued for in this action.

During the progress of the trial the chancellor appointed, with the consent of the parties, two persons to make an examination of the work and materials used and to make a report to him thereof. The men appointed were empowered to take additional testimony if necessary. They made their report to the court of the amounts which should be allowed West and Mooney, and the court substantially followed their report in making its finding of the amounts due by Mrs. Wilmot to West and Mooney.

Two witnesses testified that it would be difficult to tell whether the materials came up to specifications after they had been put into the building. One of them said that it was not a first-class job, and the other stated that it looked to be a fair job. Two other witnesses testified that the reputation of Hart in the community for truth was bad. Other testimony will be stated or referred to in the opinion.

The chancellor was of the opinion that E. O. West should recover of Mrs. S. G. Wilmot the sum of $1,154.18, and that E. B. Mooney should recover of her the sum of $300. It was decreed that these sums should be a lien upon the lot and dwelling house in question, and that the house and lot should be sold for the purpose of paying

the amounts found to be due West and Mooney respectively, if payment was not made to them within thirty days after the date of the decree.

To reverse the decree, Mrs. S. G. Wilmot has duly prosecuted this appeal.

*C. Floyd Huff* and *James E. Hogue,* for appellants.

Appellee was entitled to recover nothing under any of his contracts. There was a failure to comply with them all and an open disregard of their provisions. There can be no recovery where there is an entire contract with a stipulated price for the whole work, and only a part thereof is performed.

The words "workmanlike manner" have been judicially construed. 64 Ark. 34-7; 58 Mo. 146; Wright (Ohio) 229, 230. Appellee was not entitled to recover under any of his contracts as he failed to comply with them. 102 Ark. 152 and cases cited; 86 Ark. 570. And he had no lien on the building erected. 133 Ark. 277. Where there is a lack of substantial compliance by a contractor, he can not recover or establish a lien. 86 Ark. 570; 133 *Id.* 277; 100 *Id.* 166; 79 *Id.* 506. Neither the work nor the materials were first-class, and the work was not done in a workmanlike manner in accordance with the contract. They violated the contract in many respects, and the work was never accepted as satisfactory or in compliance with the specifications and contract. In the Mooney case the same claim is made and he never filled his contract.

It was error to allow a recovery on a *quantum meruit,* as no deductions were made for defective work or materials.

*A. B. Belding* and *A. J. Murphy,* for appellees.

All the work except the garage was passed on and approved by Mrs. Wilmot and Hart, also the prices on everything. All the matters were passed on by the commissioners and all proper credits allowed. The contracts were plain, definite and unambiguous and well under-

stood by both parties. Mrs. Wilmot was not deceived, and she knew what the cost of the alterations would be, and the price was agreed upon. Mrs. Wilmot was not deceived, and a definite and fixed price was fixed and agreed upon. The burden of proof was on appellants to sustain their contention, and they have failed. The findings of the chancellor are sustained by the evidence, and the decree in both cases should be affirmed.

HART, J. (after stating the facts). To reverse the decree, counsel for appellant invoke the rule laid down in *Harris* v. *Graham,* 86 Ark. 570, and later cases to the effect that where there has been a lack of substantial performance of a contract by a contractor, he can not establish a lien upon the property. We can not agree with counsel for appellant in their contention. The chancellor found that there had been a substantial compliance with the contract by both West and Mooney. It cannot be said that his finding of fact in this respect is against the preponderance of the evidence.

The record comprises five hundred and thirty-four pages of type-written matter, and it will therefore be impractical to set out an abstract, or even a synopsis of all the testimony. Indeed, to do so would serve no useful purpose. The testimony is in direct and irreconcilable conflict, and we deem it sufficient to say that we have given all of it careful consideration.

In the first place, it may be stated that West and Mooney both testified that after the work had been finished Mrs. Wilmot went to the house and examined the work in detail. She expressed herself to them as being satisfied with the work done by them as well as the materials used in doing it. She said that she had been caused some dissatisfaction by her husband's employing Mr. Hart, an architect, to look over the work, and his report; but that she had great confidence in Mr. West, and after examining the house she was satisfied that he had made the repairs in accordance with his agreement.

It may be noted here that numerous changes were made in the plans during the progress of the work. This indicates that Mrs. Wilmot was present and examined the work as it progressed. She made no complaint during all this time concerning the workmanship or the materials used. It is true that Hart, the architect, stated that the general character of the work was bad. But in this respect he is directly contradicted by the two men appointed by the chancellor to examine the work and to make a report thereon to him.

J. D. Brock and Eugene Patton were appointed by the court with the consent of the parties to make an examination of the work done by West and Mooney for Mrs. Wilmot. They were directed to ascertain the actual value of the work as per prices charged for such work at the time the same was done and were empowered to hear evidence of witnesses as to the same. The order provided that the parties to the suit might be present at the examination of the work. Patton and Brock examined the work and filed a detailed report to the court of the results of their examination. They reported that they had inspected and appraised the work done and the materials used in repairing the house. They further reported that where all risk is assumed by the builder, and the contractor only charges a commission for superintending or carrying on the work, ten per cent. of the cost of the labor and materials is the usual amount allowed him. West and Mooney testified that their profits were no greater than ten per cent. of the cost of the labor and the materials.

It is true that two carpenters employed by Mrs. Wilmot testified that it was impossible to ascertain what kind of materials went into the building; but, if their testimony should be accepted as true, it would not help Mrs. Wilmot any, for it would with equal force lessen the credit which should be given to Hart's testimony. This would leave West and Mooney testifying that they had performed the contract in accordance with their contract,

and Mrs. Wilmot and her husband testifying to the contrary. Brock and Patton were appointed by the court as disinterested persons with the consent of both parties for the express purpose of examining in detail the work done and materials used in the repair of the house and premises. Their report showed that they made a careful and detailed examination as they were ordered to do. Their report also shows that Mrs. Wilmot was indebted in the respective amounts found by the chancellor, and, as above stated, when all the surrounding circumstances are considered, we do not think it can be said that the finding of the chancellor, in this respect, is against the preponderance of the evidence.

E. O. West has taken a cross-appeal, and it is earnestly insisted by his counsel that he is entitled to the amount sued for, instead of the amount allowed him by the chancery court. He bases his contention upon the fact that the parties made a contract, and that the evidence shows that West is entitled to the amount sued for under his contract. But little need be said on this branch of the case. As we have just seen Brock and Patton, with the consent of the parties to this lawsuit, were appointed to inspect the work and make a report as to its value. Brock and Patton made a detailed report in accordance with the order appointing them, and it can not be said that their finding is against the express contract made by the parties. The parties agreed that they should ascertain the actual value of the work done by West as per prices charged for such work at the time same was done, and they are in no attitude to complain now that this was done.

Therefore the decree will be affirmed.